IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:23-CV-63-FL-KS

| | |
|---|---|
| WILLIAM CHARLES OSMAN, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MARTIN O'MALLEY, Commissioner ) <br> of Social Security Administration, ) <br> ) <br> Defendant. ) | **MEMORANDUM & RECOMMENDATION** |

This matter is before the court for judicial review pursuant to 42 U.S.C. § 405(g) of a final administrative decision denying Plaintiff's application for a period of disability and disability insurance benefits ("DIB"). The parties have fully briefed the matter pursuant to the Supplemental Rules for Social Security Actions,[1] and this matter is ripe for decision. Having carefully reviewed the administrative record and the parties' briefs, the undersigned recommends that the Commissioner's decision be upheld.

## STATEMENT OF THE CASE

Plaintiff applied for DIB on September 9, 2021, with an alleged onset date of January 14, 2021. (R. 18, 192.) The application was denied initially and upon

---

[1] Plaintiff filed a motion for judgment on the pleadings and supporting memorandum on March 10, 2024 [DE ##11, 12]. The undersigned construes these as Plaintiff's opening brief under the Supplemental Rules for Social Security Actions.

reconsideration, and a request for hearing was filed. (R. 18, 77, 88, 117.) A telephonic hearing was held on February 8, 2023, before Administrative Law Judge ("ALJ") Teresa Hoskins-Hart, who issued an unfavorable ruling on July 5, 2023. (R. 15–36, 38–76.) On September 13, 2023, the Appeals Council denied Plaintiff's request for review. (R. 2–4.) At that time, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. On November 10, 2023, Plaintiff filed the instant civil action, seeking judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (citations omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro*

2

v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4); *Albright v. Comm'r of SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th. Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id.* In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's residual functional capacity] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981). "If the

Commissioner meets [this] burden, the ALJ finds the claimant not disabled and denies the application for benefits." *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015).

## III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act ("the Act"). As a preliminary matter, the ALJ found Plaintiff meets the insured status requirements of the Act through September 30, 2026. (R. 20.) At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since January 14, 2021, the alleged onset date. (R. 21.) Next, the ALJ determined Plaintiff has the severe impairments of mild degenerative disc disease of the spine, mild osteoarthritis or strain of multiple joints, obesity, posttraumatic stress disorder ("PTSD"), anxiety with panic attacks, depression, and alcohol dependence disorder, uncomplicated. (R. 21.)

At step three, the ALJ concluded Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (R. 21.) The ALJ expressly considered Listings 1.15, 1.18, 12.04, 12.06, 12.08, 12.15, and Plaintiff's obesity pursuant to SSR 19–2p. (R. 21–25.)

Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff has

> the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: [Plaintiff] can climb, stoop, or crouch frequently; [Plaintiff] can balance only occasionally; [Plaintiff] can frequently, but not continuously, reach overhead. Also, [Plaintiff] is

4

limited to the ability to understand, remember, and carry out simple instructions and some detailed instructions and use judgment to make such tasks related work decisions; [Plaintiff] can sustain concentration, attention, and pace sufficient enough to carry out those instructions for two-hour intervals over the course of a typical eight-hour workday; [Plaintiff] can work in occupations requiring only occasional interactions with co-workers, supervisors, and the public; [Plaintiff] can adapt to routine and no more than occasional changes in work setting or work processes.

(R. 25.) In making this assessment, the ALJ stated that she considered Plaintiff's symptoms and the evidence (both "objective medical" and "other"), based on the requirements of 20 C.F.R. § 404.1529 and SSR 16–3p, 2017 WL 5180304 (Oct. 25, 2017), and found Plaintiff's statements concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms "not entirely consistent with the medical evidence and other evidence in the record." (R. 26.)

At step four, the ALJ concluded that Plaintiff is unable to perform any past relevant work. (R. 31.) At step five, the ALJ determined, based upon Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, namely: marker (DOT #209.587-034), photocopy machine operator (DOT #207.685-014), and office helper (DOT #239.567-010). (R. 32–33.) The ALJ concluded that Plaintiff has not been disabled under the Act from January 14, 2021, the alleged onset date, through the date of the decision. (R. 33.)

IV. Plaintiff's Arguments

Plaintiff makes four inter-related arguments on review:

(A) ALJ Hoskins-Hart erred in finding an RFC at the modified light exertional level (Pl.'s Br. [DE #12] at 25–29);

5

(B) ALJ Hoskins-Hart failed to properly assess Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms and their consistency with medical and other evidence (*id.* at 29–32);

(C) ALJ Hoskins-Hart erred in finding Plaintiff not disabled under the Medical Vocational Guidelines (*id.* at 32–33); and

(D) ALJ Hoskins-Hart inaccurately set forth a hypothetical question to the vocational expert ("VE") (*id.* at 33–36).

Arguments (C) and (D) depend on Plaintiff's arguments about the RFC assessment and evaluation of Plaintiff's statements about his symptoms and thus will be addressed together after arguments (A) and (B). For the reasons explained below, the undersigned recommends that the Commissioner's decision be upheld.

### A. RFC

The RFC is an administrative assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite impairments and related symptoms. SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996); *see also* 20 C.F.R. § 404.1545(a)(1). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96–8p, 1996 WL 374184, at *1. In assessing an individual's RFC, the ALJ considers an individual's ability to meet the physical, mental, sensory, and other requirements of work. 20 C.F.R. § 404.1545(a)(4). It is based upon all relevant evidence, which may include the claimant's own description of limitations from alleged symptoms. SSR 96–8p, 1996 WL 374184, at *5; 20 C.F.R. § 404.1545(a)(3). If

6

necessary, an ALJ must "explain how any material inconsistencies or ambiguities in the evidence were considered and resolved." SSR 96–8p, 1996 WL 374184, at *7. In fulfilling the obligation to consider all relevant evidence, an ALJ "cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) (quoting *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)).

An ALJ must "include a narrative discussion describing how the evidence supports each conclusion" in the RFC. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636). The ALJ must specifically explain how certain pieces of evidence support particular conclusions and "discuss[ ] . . . which evidence the ALJ found credible and why." *Monroe*, 826 F.3d at 189 (quoting *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). The Fourth Circuit has interpreted this to require an ALJ to "build an accurate and logical bridge from the evidence to [her] conclusion." *Monroe*, 826 F.3d at 189 (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)); *see also Arakas v. Comm'r of SSA*, 983 F.3d 83, 95 (4th Cir. 2020). ALJs must explain their RFC findings regarding contested functional abilities when conducting the required function-by-function analysis. *See Dowling v. Comm'r of SSA*, 986 F.3d 377, 388–89 (4th Cir. 2021).

"[A] proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion . . . . [M]eaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (citing *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir.

7

2018)). Simply put, this means an ALJ must "[s]how [her] work." *Patterson v. Comm'r of SSA*, 846 F.3d 656, 663 (4th Cir. 2017) (applying same principle to an ALJ's listing analysis). Such analysis—"[h]armonizing conflicting evidence and bolstering inconclusive findings," *Patterson*, 846 F.3d at 662—is a "necessary predicate" to determining whether substantial evidence supports the Commissioner's findings, *Monroe*, 826 F.3d at 189 (quoting *Radford*, 734 F.3d at 295). Where a court is "left to guess about how the ALJ arrived at [the] conclusions on [a claimant's] ability to perform relevant functions . . . , remand is necessary." *Mascio*, 780 F.3d at 637.

Plaintiff argues that the modified light RFC is not supported by substantial evidence because (1) there is credible evidence that demonstrates he cannot perform the physical requirements as he cannot stand or walk for six hours in an eight-hour day, and (2) there is substantial evidence that his PTSD, anxiety, depression, and panic attacks would substantially interfere with memory, focus, and concentration. (Pl.'s Br. at 25–29.) These arguments should be rejected for two reasons.

First, Plaintiff fails to cite any evidence in the record supporting these contentions. (Pl.'s Br. at 28–29.) While Plaintiff does refer to the disability ratings of the U.S. Department of Veterans Affairs ("VA"), a March 22, 2022, consultative exam, and his own testimony, he fails to specifically cite any record evidence to support his argument. (*Id.*) It is not the role of the reviewing court to "mine the record" to find facts to support or refute the ALJ's findings. *See Green v. Colvin*, No. 1:14-CV-293-RJC-DSC, 2016 WL 830990, at *3 (W.D.N.C. 2016) (citing *Brown v. Colvin*, 639 F. App'x 921, 923 (4th Cir. 2016)). Moreover, ALJ Hoskins-Hart did assess this

8

referenced evidence, with the exception of the VA disability ratings.[2] (R. 29–30 (finding that the March 2022 exam lacked supportability and consistency); R. 25–26 (reviewing Plaintiff's own statements and hearing testimony and finding it not entirely consistent with medical and other evidence).)

Second, ALJ Hoskins-Hart sufficiently explained how she arrived at the RFC assessment. She included a proper narrative discussion of the evidence as well as which evidence she found credible and why. *Monroe*, 826 F.3d at 189. Initially, she summarized Plaintiff's reported limitations. (R. 25–26 (reported physical limitations) and R. 28 (reported mental limitations).) Then, ALJ Hoskins-Hart reviewed the objective medical evidence regarding Plaintiff's degenerative disc disease of the spine (R. 26), degenerative joint disease of the hips and left ankle (R. 27), degenerative joint disease of the shoulder (R. 27), and mental limitations (R. 28). She weighed inconsistent evidence and made credibility determinations in line with the requirements of 20 C.F.R. § 404.1529 and SSR 16–3p, 2016 WL 1119029 (Mar. 16, 2016). (R. 26 (finding that Plaintiff's statements about his symptoms are inconsistent with both objective medical evidence and his own statements about his independence and activity levels).) Next, she assessed each medical opinion for supportability and

---

[2] On several occasions, Plaintiff contends that the ALJ failed to consider conclusions made by the VA regarding Plaintiff's disability ratings (Pl.'s Br. at 4–5, 28, 31.) The ALJ is not required to provide any analysis in her determination about a decision made by any other governmental agency about whether a claimant is disabled. *See* 20 C.F.R. § 404.1504; *Rogers v. Kijakazi*, 62 F.4th 872, 879–80 (4th Cir. 2023). The ALJ is required to consider supporting evidence underlying the VA decision. *See* 20 C.F.R. § 404.1504. Plaintiff identifies no evidence in the record underlying the VA's disability ratings that the ALJ failed to consider.

9

consistency with other record evidence. (R. 29–31); *see Oakes v. Kijakazi,* 70 F.4th 207 (4th Cir. 2023) (supportability and consistency are the most important factors to be considered when reviewing a medical opinion).

The ALJ also articulated a logical bridge between the evidence and her conclusion. *Monroe*, 826 F.3d at 189. Regarding Plaintiff's physical limitations, the ALJ found:

- Plaintiff's degenerative disc disease of the spine remained stable without treatment. His treatment notes show no active treatment and imaging studies are mild. (R. 717.) Nevertheless, there are mild degenerative changes (R. 717), limited range of motion (R. 414), weight bearing abnormalities, and obesity (R. 490) that need to be accounted for. (R. 26 (ALJ's summary).)

- Plaintiff's degenerative joint disease of the hips and left ankle remained stable with minimal treatment. He retained normal gait and range of motion in the ankle. (R. 413–15.) That said, he exhibited decreased motor strength, swelling in the left ankle, difficulty walking on heels and toes, and limited range of motion in the hips. (R. 27 (ALJ's summary), 413–15.)

- Plaintiff's degenerative joint disease of the shoulder is stable without treatment. He has 5/5 motor strength in the bilateral upper extremities and mild findings on imaging studies. (R. 413, 717.) However, he also displays mild AC joint osteoarthritis and limited range of motion. (R. 27 (ALJ's summary), 414, 717.)

For each physical impairment, ALJ Hoskins-Hart identified the objective medical evidence supporting the RFC assessment and explained how she accounted for observed deficits in Plaintiff's abilities. Thus, the ALJ's decision included the proper evidence, logical explanation, and conclusion that allows for meaningful review. *Thomas*, 916 F.3d at 311.

10

Case 2:23-cv-00063-FL   Document 16   Filed 09/25/24   Page 10 of 16

Similarly, for Plaintiff's mental impairments, the ALJ found that Plaintiff is stable with psychotropic medications and has no barriers to accessing such medication or treatment. (R. 28 (ALJ's summary), 325, 393, 474, 605.) Nevertheless, the ALJ found Plaintiff has some limitations in his cognitive and adaptive functioning that were factored into the RFC assessment. (R. 28–29 (ALJ's summary), 423–24.) As above, the undersigned can trace the rationale between the evidence and the ALJ's conclusion. *Monroe*, 826 F.3d at 189.

In sum, Plaintiff has failed to show that ALJ Hoskins-Hart erred by ignoring evidence in the record or by assessing an RFC that leaves materially inconsistent record evidence unresolved.

### B.   Symptom Evaluation

Evaluation of the severity of a claimant's symptoms is separate and distinct from the RFC assessment, although the two inquiries are related. *Dowling*, 986 F.3d at 387 (explaining the relationship between a symptom evaluation and RFC assessment). A symptom evaluation requires two steps: "[f]irst, the ALJ must determine whether objective medical evidence presents a 'medically determinable impairment' that could reasonably be expected to cause the claimant's alleged symptoms," and then second, "the ALJ must assess the intensity and persistence of the alleged symptoms." *Arakas*, 983 F.3d at 95 (citing 20 C.F.R. § 404.1529 and SSR 16–3p, 2016 WL 1119029 (Mar. 16, 2016)). This two-step process was "born out of a long history of disagreements" between the Fourth Circuit and the Commissioner regarding how to evaluate a claimant's subjective complaints of pain. *Arakas*, 983

11

F.3d at 95. Importantly, a claimant is "entitled to rely exclusively on subjective evidence" to prove that her symptoms are so severe that they prevent her from working a full day. *Id.* at 95–96 (quoting *Hines v. Barnhart*, 453 F.3d 559, 563–65 (4th Cir. 2006)). *See also Oakes*, 70 F.4th at 215–17.

The ALJ determined that Plaintiff did have underlying physical and mental impairments which could reasonably be expected to cause the alleged symptoms. (R. 26.) Then, the ALJ assessed the intensity and persistence of the alleged symptoms and made the following points: (1) Plaintiff maintains independence with daily activities and housework (R. 26); (2) Plaintiff exercises despite his alleged pain and limitations (R. 26); (3) treatment records indicate Plaintiff's degenerative disc disease of the spine and degenerative joint disease of the hips and left ankle remained stable with treatment (R. 26–27); (4) treatment records indicate that Plaintiff's degenerative joint disease of the shoulder remained stable without treatment (R. 27); and (5) treatment records and Plaintiff's own testimony regarding his mental impairments indicate that medication helps his impairments and he has no barriers to accessing medication (R. 28).

Plaintiff contends the ALJ "minimized, ignored, and rejected" evidence of physical and mental limitations. (Pl.'s Br. at 32.) However, Plaintiff has not cited any evidence in the record that was ignored by the ALJ. (*Id.* at 29–32.) Instead, Plaintiff primarily relies on *Arakas v. Comm'r of SSA*, 983 F.3d 83, 95 (4th Cir. 2020), and *Shelley C. v. Comm'r of SSA*, 61 F.4th 341 (4th Cir. 2023), to argue that plaintiffs can "rely exclusively on subjective evidence to prove the severity, persistence and limiting

12

effects of their symptoms." (Pl.'s Br. at 30.) These cases do not suggest that an ALJ should ignore objective evidence and fully credit subjective statements; instead, an ALJ cannot "requir[e] claimants to provide medical evidence that would be impossible to produce given their specific medical conditions." *Clifford E. v. O'Malley*, No. 1:23-CV-704-LPA, 2024 WL 3105669, at *10 (M.D.N.C. June 24, 2024) (quoting *Anthony P. v. O'Malley*, No. 1:22-CV-291-DJN, 2024 WL 965608, at *3 (E.D. Va. Mar. 6, 2024)).

Here, the ALJ expressly stated that she reviewed both objective medical evidence as well as "other record evidence" including evidence of Plaintiff's daily activities, his own reports of pain, exercise levels, and limitations, and his hearing testimony. (R. 26, 28.) Where there were inconsistencies in the record, ALJ Hoskins-Hart properly weighed them against other evidence in the record. *See Clifford E.*, 2024 WL 3105669, at *9; *LaSharne W. v. Comm'r of SSA*, No. 8:21-CV-2603-SAG, 2023 WL 2414497, at *4 (D. Md. Mar. 8, 2023) (no error under *Arakas* or *Shelley C.* for an ALJ to weigh a claimant's "subjective complaints against other evidence in the record"). While Plaintiff disagrees with the ALJ's evaluation of his symptom severity, this court is not permitted to "re-weigh conflicting evidence, make credibility determinations, or substitute [its] own judgment" for the ALJ's. *See Craig,* 76 F.3d at 589. In sum, the ALJ appropriately analyzed Plaintiff's statements about the severity of his symptoms by following the two-step process set forth in 20 C.F.R. § 1529 and expounded upon in SSR 16–3p, and substantial evidence supports the ALJ's findings.

### C. Plaintiff's Remaining Arguments

Plaintiffs remaining two arguments depend on Plaintiff's arguments about the RFC assessment and the evaluation of Plaintiff's statements about his symptoms. Plaintiff argues that "[i]f the ALJ had determined that [Plaintiff] was limited to a sedentary residual functional capacity, then he would have been disabled by application of **Rule 201.14**" of the Medical Vocational Guidelines (Grids). (Pl.'s Br. at 32–33.) This argument depends upon a finding that the ALJ erred in her RFC determination, as it takes issue with the finding that Plaintiff can perform modified light exertional work. As explained above, the ALJ did not err with respect to the RFC determination. Thus, this argument should be rejected.

Plaintiff then argues the ALJ inaccurately set forth hypothetical questions to the VE because the "ALJ failed to include physical and mental functional limitations which are based on a fair and reasonable interpretation of the medical evidence corroborated by [Plaintiff's] testimony." (Pl.'s Br. at 34.) Plaintiff contends the ALJ failed to include physical limitations with his spine and lower extremities and mental limitations related to his PTSD, anxiety, depression, and panic attacks. (*Id.*) The ALJ asked the VE to consider four hypotheticals about an individual with Plaintiff's age, education, and prior work experience. (R. 68–71.) Each hypothetical asked the VE to assume the individual could perform light exertional work, but with some varied physical and mental limitations. (R. 68–71.) Having concluded that substantial evidence supports the ALJ's RFC assessment of modified light work, the hypothetical questions posed to the VE adequately reflected Plaintiff's characteristics and did not

14

exceed Plaintiff's limitations as described by the record evidence. *See Johnson v. Barnhart,* 434 F.3d 650, 659 (4th Cir. 2005) (no error in ALJ's hypothetical questions to VE where questions were based on RFC supported by substantial evidence). Thus, this argument should also be rejected.

## CONCLUSION

For the reasons stated above, it is RECOMMENDED that the Commissioner's decision be AFFIRMED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel.  Each party shall have until **October 9, 2024**, to file written objections to the Memorandum and Recommendation.  The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. (May 2023).

A party that does not file written objections to the Memorandum and Recommendation by the foregoing deadline, will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, a party's

failure to file written objections by the foregoing deadline may bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846–47 (4th Cir. 1985).

This 25th day of September 2024.

_____
KIMBERLY A. SWANK
United States Magistrate Judge